

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID LANE JOHNSON,

                      Plaintiff,

-v-

NATIONAL FOOTBALL LEAGUE PLAYERS
ASSOCIATION,

                      Defendant.

No. 17-cv-5131 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Now before the Court is Defendant National Football League Players Association's ("NFLPA") motion for summary judgment. (Doc. No. 134.) For the reasons stated below, the motion is GRANTED.

I. BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this case, which are set forth in detail in the Court's October 3, 2018 Opinion and Order. (Doc. No. 125.) In that opinion, the Court granted Defendant's motion to dismiss Plaintiff's First Amended Complaint except as to Plaintiff's claim under Section 104 of the Labor Management Reporting and Disclosure Act ("LMRDA"), which alleged that the NFLPA refused to provide, upon request, a copy of the full operative collective bargaining agreement between the parties. (*Id.*) In doing so, the Court made clear that the only relief to which Plaintiff could be entitled under that claim was a copy of the complete agreement. (*Id.* at 17 n.3.)

Subsequently, on October 16, 2018, the NFLPA produced to Plaintiff what the NFLPA describes as "a complete copy of the 2015 Policy and all agreements that modified the 2015 Policy." (Doc. No. 126 at 4.) On October 23, 2018, the Court issued an order finding that, because Plaintiff's surviving LMRDA claim "turns on the question of whether the NFLPA's October 16 document

production has mooted the claim . . . further discovery is not appropriate," and set a briefing schedule for the NFLPA's motion for summary judgment. (Doc. No. 131.)

On November 19, 2018, Plaintiff filed a letter regarding a contemplated motion seeking discovery under Federal Rule of Civil Procedure 56(d). (Doc. No. 141.) The NFLPA responded on November 26, 2018. (Doc. No. 144.) After directing a reply by Plaintiff, which was filed on December 3, 2018 (Doc. No. 149), the Court deemed the motion made and fully briefed (Doc. No. 146). On January 9, 2019, the Court denied Plaintiff's Rule 56(d) motion for discovery, reasoning that Johnson's request for discovery was "not related to his remaining claim and . . . not proportional to the needs of the case." (Doc. No. 150 at 2). Subsequently, on January 16, 2019, Plaintiff filed his opposition to the NFLPA's motion for summary judgment. (Doc. Nos. 151 ("Johnson Br."), 152.) The NFLPA filed its reply on January 28, 2019, at which point the motion was fully briefed. (Doc. Nos. 153, 154.)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing

summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "show[s] – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted).

III. DISCUSSION

A. Plaintiff's LMRDA Claim is Moot

As the Court has previously held (*see* Doc. No. 131 at 1, Doc. No. 150 at 2), the only remaining question in this case is whether the NFLPA's October 16 document production has mooted Plaintiff's LMRDA claim by providing Plaintiff with an entire copy of the 2015 Performance-Enhancing Substances Policy (the "Policy").[1] The NFLPA maintains that the October 16 production provided

---

[1] Plaintiff's effort to relitigate the question of whether receiving the full Policy moots his claim by attempting to distinguish *Gonzalez v. Local 32BJ*, No. 09-cv-8464 (SHS) (RLE), 2010 WL 3785436 (S.D.N.Y. Sept. 7, 2010), *report and recommendation adopted*, 2010 WL 3785363 (S.D.N.Y. Sept. 28, 2010), and *Mazza v. Dist. Council of N.Y.*, Nos. cv-00-6854 (BMC) (CLP), cv-01-6002 (BMC) (CLP), 2007 WL 2668116 (E.D.N.Y. Sept. 6, 2007), is unavailing. (*See* Johnson Br. at 13–14.) The factual distinctions to which Plaintiff points, including whether or not the plaintiff requested a copy of the collective bargaining agreement ("CBA") prior to discovery and whether the CBA was attached to the complaint, are irrelevant to the conclusion that obtaining the only possible relief in the case – a copy

Plaintiff with the entirety of the Policy within the meaning of the LMRDA, pointing to undisputed facts and to declarations from the NFLPA's labor counsel, Stephen Saxon, and its Associate General Counsel, Heather McPhee. (Doc. Nos. 135 at 3–6; Doc. No. 136; Doc. Nos. 138–139.) The production included what the NFLPA terms "a complete copy of the 2015 Policy," as well as three additional documents: an April 2013 letter memorializing an agreement between the NFLPA and the NFL regarding medical record authorization forms for players; a May 2015 letter modifying the prior 2014 policy to provide that the duties of the Chief Forensic Toxicologist ("CFT") could be fulfilled by the Directors of the UCLA Olympic Analytical Laboratory and the Sports Medicine Research and Testing Laboratory; and, finally, "[s]creen shots" of player certifications regarding drug testing. (Doc. No. 136 at 1–2.) The NFLPA asserts that it "made certain that all documents relevant to the 2015 Policy were included by erring on the side of over-inclusiveness." (Doc. No. 136 at 2.) Furthermore, Mr. Saxon's declaration states that he is "not aware of – and do[es] not believe that there are – any other documents relating to the 2015 Policy that Mr. Johnson has not received that the NFLPA would be required to produce" (Doc. No. 138 ("Saxon Decl.") at 2), and Ms. McPhee's declaration states that she is "not aware of – and does not believe there were any – oral agreements between the NFLPA and the NFL to modify the 2015 Policy" (Doc. No. 139 ("McPhee Decl.") at 1).

Plaintiff denies that the NFLPA's October 16 production represents the entire 2015 agreement (Doc. No. 152 at 2), arguing that a material dispute of fact remains as to five categories of documents: (1) the "CFT Amendment" (Johnson Br. at 4); (2) the "Amendment Regarding the Number of Arbitrators" (*id.*); (3) laboratory "Policy Protocols and Procedures" (*id.* at 6); (4) the "Amendment to the Two-Year Testing Period" (*id.* at 8); and, finally, (5) "Other Unknown Modifications and Amendments" to the policy (*id.* at 9). For the reasons stated below, each of these arguments fails to establish a genuine issue of material fact with respect to the mootness of Plaintiff's claim.

---

of the relevant CBA – moots a claim under § 104 of the LMRDA. Plaintiff points to no authority to the contrary.

First, as to the CFT Amendment, Plaintiff argues that the production is insufficient because the April 2013 letter states that it is a modification to the 2014 Policy, not the 2015 Policy at issue in this case. (Johnson Br. at 4.) Yet the plain language of the agreement states that it applies "[u]ntil such time as the Parties jointly select a new Chief Forensic Toxicologist." (Doc. No. 113 Ex. 9 at 2.) Given that the agreement unequivocally states that it applies on a going-forward basis, there is no merit to Plaintiff's contention that the NFLPA has failed to produce an agreement regarding the CFT that is applicable to the 2015 Policy.

Next, Plaintiff argues that the NFLPA has failed to produce any document modifying the 2015 Policy's requirement that three to five arbitrators be available to hear appeals. (Johnson Br. at 4–6.) Plaintiff maintains that statements made by the NFLPA before the U.S. District Court for the Northern District of Ohio reference such modifications, and that the NFLPA's current position is inconsistent with those past representations. (*Id.* at 5.) But as the Court previously determined, it took the NFL and the NFLPA "six months to choose the first arbitrator, three more months to agree upon a second, and eighteen months more to select a third." (Doc. No. 125 at 12.) While Plaintiff's appeal took place partway through this selection process at a time when only two arbitrators were available, Plaintiff does not dispute that there are presently three arbitrators. (*See* Doc. No. 135 at 5.) Given that there was ultimately no modification of the three-to-five arbitrator requirement, Plaintiff's insistence that the NFLPA is withholding a secret modification to the policy constitutes mere conjecture that is insufficient to create a material dispute of fact. *See Kerzer*, 156 F.3d at 400.

Plaintiff's third argument is that the NFLPA's production is incomplete because it failed to provide the laboratory testing protocols that are referenced in the Policy. (Johnson Br. at 6–8; *see also* Doc. No. 39 ("First Amended Complaint" or "FAC") Ex. 1 at 16 (stating that testing for prohibited substances is "conducted in accordance with the collection procedures and testing protocols of the Policy and the protocols of the testing laboratory").) By its plain terms, Section 104 of the LMRDA

5

applies only to "collective bargaining agreements." 29 U.S.C. § 414. According to Plaintiff, the Policy incorporated the laboratory protocols by reference and, therefore, they must be produced to Plaintiff under the LMRDA. (Johnson Br. at 12.) Yet the documents Plaintiff seeks are laboratory documents, not collectively-bargained agreements between the NFLPA and the NFL. Plaintiff's reliance on the U.S. Department of Labor's Office of Labor Management Standards ("OLMS") Interpretive Manual, which states that "all *agreements* which are incorporated by reference into the basic working agreement become a part of it," is therefore misplaced. (Johnson Br. Ex. 5 § 110.300 (emphasis added)). The NFLPA's failure to produce UCLA's proprietary laboratory documents, as opposed to agreements between itself and the NFL, cannot create a genuine dispute of material fact with respect to the sufficiency of the NFLPA's production.

Plaintiff next contends that summary judgment is precluded by the NFLPA's failure to produce a purported "amendment" to the provision of the Policy that "allows the NFL to conduct reasonable cause testing for no more than two[] years." (Johnson Br. at 8.) While the Court previously found that there was no "modification" to the Policy with respect to the bargaining parties' interpretation of the two-year testing period, the Court referred to the allegation that the NFLPA had never provided Plaintiff with a "side agreement relating to the bargaining parties' interpretation of the timeline for reasonable cause testing" as one reason why Plaintiff's LMRDA claim survived the NFLPA's motion to dismiss. (Doc. No. 125 at 17.) However, in the wake of the NFLPA's October 16 production, no genuine dispute of material fact remains with respect to this alleged side agreement. In the face of the NFLPA's affirmative representations that there exist no other as-yet-unproduced documents within the scope of the LMRDA and, specifically, that "there is no . . . side agreement relating to the bargaining parties' interpretation of the timeline for reasonable-cause testing" (Saxon Decl. at 2), Plaintiff offers only speculation that such an agreement must exist because (1) "the [P]olicy does not say [the Policy's Independent Administrator] Dr. Lombardo decides" how long a player remains in reasonable-cause testing and (2) "if Dr. Lombardo is responsible for applying and designating the reasonable-cause

testing period, an agreement (oral or written) should exist reflecting this responsibility." (Johnson Br. at 8.) Yet the Policy does state that it "will be directed by the Independent Administrator" who "shall have the sole discretion to make determinations, consistent with the terms of th[e] Policy" concerning numerous subject areas, including the decision to place players in the reasonable cause testing program. (FAC Ex. 1 §§ 2.1, 3.1.) Furthermore, the Arbitral Award, which has been confirmed by the Court and is thus binding on the parties, found that Dr. Lombardo had the discretion to interpret the Policy regarding the permissible time period for reasonable cause testing. (*See* FAC Ex. 2 ¶¶ 6.15, 6.19.) In light of the declarations submitted by the NFLPA, the Policy's express authorization, and the arbitrator's finding, the Court concludes that Plaintiff has not raised a genuine dispute of material fact with respect to this aspect of the document production.

Finally, Plaintiff deploys the catch-all argument that summary judgment is inappropriate because, "[a]bsent discovery, it is impossible to know if there are other modifications and amendments to the Policy that the NFLPA has not provided." (Johnson Br. at 9.) The Court is unpersuaded. The LMRDA cannot be used as a license for a fishing expedition when Plaintiff can offer nothing beyond mere conjecture to suggest that there is any part of the Policy that has not yet been produced. Plaintiff's reliance on *Leavey v. International Brotherhood of Teamsters – Theatrical Teamsters Local Union No. 817*, No. 13-cv-0705 (NSR), 2015 WL 5802901 (S.D.N.Y. Oct. 5, 2015) is accordingly misplaced. In that case, the plaintiff identified specific collectively-bargained agreements that he had requested and that he alleged had not yet been produced to him. *Id.* at *6. Here, by contrast, Plaintiff points only to non-collectively-bargained documents that do not come within the scope of the LMRDA and speculates as to the existence of additional modifications and documents relating to the Policy. In its ruling on Plaintiff's 56(d) motion, the Court already declined to indulge Plaintiff's attempt to use the surviving LMRDA claim as a way to obtain the wide-ranging discovery that was foreclosed when the Court granted the NFLPA's motion to dismiss Plaintiff's dutyof fair representation claims. (Doc. No. 150 at 2–3.) The Court declines to reconsider that decision here.

Thus, each of Plaintiff's contentions with respect to the October 16 document production fails to demonstrate a genuine dispute of material fact. In light of the evidence set forth by the NFLPA and the undisputed facts before the Court, summary judgment in favor of the NFLPA is therefore warranted as to Plaintiff's claim under Section 104 of the LMRDA.[2]

B. Plaintiff Has No Surviving "LMRDA Retaliation" Claim

The Court is likewise unpersuaded by Plaintiff's attempt to, once again, recast his claim under LMRDA Section 104, 29 U.S.C. § 414, as a standalone claim for retaliation for exercising his rights under the LMRDA. Plaintiff's First Amended Complaint invokes solely Section 104 of the LMRDA, pertaining to a union's provision of collective bargaining agreements to members, and does not reference any of the LMRDA sections relating to retaliation. (See FAC ¶ 25.) The First Amended Complaint's single threadbare and conclusory factual allegation that the NFLPA's alleged failure to provide documents was somehow a retaliatory act (*see* FAC ¶ 314) fails to satisfy the basic requirement that a pleading "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). Accordingly, the Court has already rejected Plaintiff's "misrepresent[ation] of the scope of [Plaintiff's] surviving LMRDA claim," clarifying that any "claims against the NFLPA for 'disciplin[ing] or retaliat[ing] against Johnson for asserting his rights under the LMRDA' were dismissed by this Court as part of Johnson's duty of fair representation claim." (Doc. No. 150 at 2 (first quoting Doc. No. 141; then citing Doc. No. 125 at 15–16).)

But even if Plaintiff had pleaded a freestanding LMRDA retaliation claim, it plainly could not withstand a motion to dismiss. Plaintiff now invokes his free speech rights under Section 102 of the LMRDA, 29 U.S.C. § 411 *et seq.*, as the basis for his retaliation claim and acknowledges that he must

---

[2] Because the Court grants summary judgment on the grounds that the NFLPA's October 16 document production mooted Plaintiff's LMRDA claim, the Court does not reach the NFLPA's alternative argument that Plaintiff lacks standing with respect to his LMRDA claim.

establish that "(1) his conduct constituted 'free speech' under the LRMDA; (2) that the speech was a cause of the Union taking action against him; and (3) damages." *Leavey*, 2015 WL 5802901, at *8; Johnson Br. at 19–20. Yet the very case Plaintiff cites provides that "free speech within the meaning of the LMRDA is speech made in the context of the union democratic process, i.e. political speech *primarily addressed to other union members*, rather than free speech at large." *Leavey*, 2015 WL 5802901, at *9 (internal quotation marks and citation omitted) (collecting cases). Plaintiff, meanwhile, has pleaded nothing of the sort; his allegations reference only his media statements to the public at large. (*See* FAC ¶¶ 123–126 (describing Plaintiff's statements to the media as instigating "[t]he NFLPA's Public Dispute with Johnson"); *see also* Doc. No. 151 Ex. 1 ("Johnson Decl.") at 1 ("I publicly questioned the representation the [NFLPA] provided me . . . .").) Because the Court finds that Plaintiff did not plead an LMRDA retaliation claim and that the First Amended Complaint's allegations with respect to retaliation were already dismissed in the Court's October 3, 2018 opinion, the Court need not enter summary judgment on that claim. However, for the reasons stated above, the purported claim is clearly nonviable and cannot be the basis for ongoing litigation and discovery in this case.[3]

## IV. CONCLUSION

For the foregoing reasons, the NFLPA's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 134 and to close this case.

SO ORDERED.

Dated: August 2, 2019
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

---

[3] Because the Court grants summary judgment in favor of the NFLPA with respect to the lone surviving claim in the case, the Court does not reach Plaintiff's argument that he preserved his right to demand a jury trial.